UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MIKE GOODMAN,<br><br>            Plaintiff,<br><br>        v.<br><br>NEW HAMPSHIRE INSURANCE COMPANY, a Pennsylvania corporation, and AMERICAN INTERNATIONAL GROUP, Inc., a Delaware corporation,<br><br>            Defendants. | CASE NO. C09-1493RSM<br><br>ORDER ON MOTION FOR SUMMARY JUDGMENT OF DISMISSAL OF AFFIRMATIVE DEFENSES |

This matter is before the Court for consideration of plaintiff's motion for summary judgment on defendant's affirmative defense. Dkt. # 41. Plaintiff asks the Court to strike the affirmative defense regarding concealment or misrepresentation that was asserted in defendant's amended answer filed April 9, 2010. Dkt. # 26. Defendant has opposed the motion, and in a surreply asks the Court to strike certain paragraphs of plaintiff's reply memorandum, together with supporting declarations. Dkt. # 59. Plaintiff has objected to the surreply and motion to strike, although the local rules of this Court do not allow such a response unless directed by the Court. Local Rule CR 7(g)(4).

Plaintiff has requested oral argument on this motion but the Court deems it unnecessary. After reviewing the motion, the parties' memoranda, the supporting exhibits, and the motion to strike, the

ORDER - 1

Court has determined that defendant's motion to strike shall be granted, and plaintiff's motion for a summary judgment on the affirmative defense shall be denied.

## BACKGROUND

The parties and the Court are familiar with the facts as they were detailed in an earlier summary judgment order, and they need only be briefly summarized here. Dkt. # 66. This case aries from a diesel fuel leak aboard plaintiff's yacht, the *Conundrum*, which is insured by defendant New Hampshire Insurance Company ("New Hampshire"). On September 24, 2007, while the yacht was moored at Elliot Bay Marina, a leaking starboard fuel tank triggered automatic bilge pumps which pumped the diesel fuel overboard into the water. When the leak was discovered, the bilge pumps were shut off and the spilled fuel was cleaned up at a cost of $4,433.58. Plaintiff contacted New Hampshire to request information regarding coverage for the spill clean-up costs. In the course of investigating the source of the spill, New Hampshire hired a marine surveyor (Dave Cater) who removed the starboard fuel tank for inspection. This required removal of the vessel's cockpit and decking. After inspecting and testing the aluminum fuel tank, Mr. Cater determined that the fuel tank leak was caused by corrosion.

Plaintiff hired a marine contractor, Driver Marine, to clean the boat, replace both fuel tanks (port and starboard tanks), and to rebuild and replace the vessel's superstructure, cockpit and deck. He then submitted invoices for the work done by Driver Marine. When defendant declined to pay the amount requested to reimburse plaintiff for his loss, plaintiff filed this action for breach of contract, bad faith, and violation of the Washington Consumer Protection Act. Dkt. # 1, p. 6.

It is defendant's position that the invoices submitted by plaintiff include work on the boat that was not directly related to repairing the fuel tank and fuel leak damage, as well as items that are expressly excluded from coverage under the policy. Defendant's amended answer includes two affirmative defenses based on exclusions in the insurance policy. First, defendant asserts that loss or damage from corrosion is not covered under the policy. Answer and Affirmative Defenses, Dkt. # 26, ¶ 36. Next, defendant asserts that plaintiff, by submitting invoices for work unrelated to the fuel tank damage, intentionally misrepresented the amount of the loss, which voids the policy coverage entirely. *Id*., ¶ 37. It is this affirmative defense which plaintiff has moved to strike in his motion for summary

ORDER - 2

judgment.

## DISCUSSION

**I. Motion to Strike**

Defendant has moved to strike two arguments asserted in plaintiff's reply, designated as Paragraphs E and F, together with two supporting declarations, specifically portions of the Declaration of Joe Bozick, and the Declaration of Robert Zarkos. Dkt. # 59. Defendant contends that the arguments set forth in Paragraphs E (proximate cause) and F (waiver and estoppel) are improper in that they are asserted for the first time in reply. The motion to strike Paragraph 2 of the Declaration of Joe Bozick, and Exhibit 2 to that Declaration, are based on the fact that they support plaintiff's new argument raised in paragraph E, namely that the efficient proximate cause of the loss to the boat was defective design or construction of the boat, not corrosion. The motion to strike the Declaration of Robert Zarkos (plaintiff's former attorney) is based on the fact that Mr. Zarkos was not previously disclosed as a witness, and defendant had not, at the time its opposition was filed, had an opportunity to depose him.

In response to these arguments, plaintiff asserts that the new argument regarding proximate case is justified because "causation is before the Court at this time," and plaintiff "is compelled to respond to this issue in light of the new evidence of Mr. Cater's testimony" [regarding causation by corrosion]. While the Court has already noted that this response to the motion to strike was filed without authorization and is therefore improper under the local rules, these assertions will be addressed. Plaintiff's contention that "causation is before the Court at this time" is meritless, as the only issue before the Court in this motion is defendant's affirmative defense of misrepresentation/concealment. Plaintiff's argument that the Declaration of Joe Bozick was necessary to rebut the "new evidence" of Mr. Cater's testimony is also without merit, as Mr. Cater's opinion is not "new evidence." Mr. Cater's opinion regarding corrosion as the cause of the fuel tank leak was set forth in his declaration and attached report which were filed on April 5, 2010, in response to plaintiff's first motion for partial summary judgment. Dkt. # 20. Plaintiff has known of Mr. Cater's opinion and his report since at least that date, and cannot now characterize these as "new evidence."

As to Mr. Zarkos' declaration, plaintiff asserts that defendant's objection based on non-

ORDER - 3

disclosure is "moot" because "[d]fendant has had the opportunity to depose Mr. Zarkos." Dkt. # 68, p. 1. Plaintiff makes this argument in a document filed on June 18, 2010, well after the noting date for the underlying motion, and two weeks after defendant's motion to strike was filed. The fact that defendant later had an opportunity to depose Mr. Zarkos is irrelevant to the question of whether his declaration should be considered with respect to this pending motion. Defendant's motion to strike is well-founded, not moot.

Defendant's motion to strike is accordingly GRANTED, and the Court strikes Paragraphs E and F of plaintiff's reply (Dkt. # 51), together with Paragraph 2 of the Declaration of Joe Bozick and Exhibit 2 thereto (Dkt. # 52), as well as the Declaration of Robert Zarkos. Dkt. # 55.

**II**. **Motion for Summary Judgment on the Affirmative Defense**

**A. Legal standard**

Summary judgment should be rendered "if the pleadings, the discovery and disclosure material on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). An issue is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The evidence is viewed in the light most favorable to the non-moving party. *Id*. "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co.*, 68 F. 3d 1216, 1221 (9th Cir. 1995). It should also be granted where there is a "complete failure of proof concerning an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient" to prevent summary judgment. *Triton Energy Corp.*, 68 F. 3d at 1221.

**II. Analysis**

The relevant portions of the insurance policy on the yacht *Conundrum* state as follows:

GENERAL CONDITIONS AND EXCLUSIONS

. . . .

ORDER - 4

> 10. CONCEALMENT OR MISREPRESENTATION:  Any relevant coverage[s] shall be voided if **you** intentionally conceal or misrepresent any material fact or circumstance relating to this insurance, or **your** insurance application, whether before or after a loss.

Declaration of Mike Goodman, Dkt. # 14, Exhibit 2 (New Hampshire Insurance Company Yacht Policy).

Defendant asserts as an affirmative defense that under this section, "all relevant policy coverages have been voided" by plaintiff's "intentional concealment and/or misrepresentation."  Answer and Affirmative Defenses, Dkt. # 25, ¶ 37.  In moving for summary judgment, and in opposing the motion, the parties have submitted a great many materials.   However, the core of plaintiff's motion is his declaration that

> I did not intend to misrepresent or conceal anything to Defendant during the settlement negotiations.  I also did not overstate my claim to Defendant during the settlement negotiations.  In fact, I informed Mr. Cater and New Hampshire that not all of my incurred costs were directly related to the loss.  For example, the repairs that were not directly related to the loss were pointed out to Mr. Cater by Mr. Brown.  Therefore, there was a meeting on the boat among myself, Mr. Brown, Mr. Cater, and New Hampshire's counsel, Mr. Crane.  This occurred on August 8, 2008.  The purpose of the meeting was to expressly address identity of any unrelated work.  During this meeting the unrelated work was pointed out to Mr. Crane and Mr. Cater.  There was complete disclosure to Mr. Cater as to all repairs by me and by my expert, Mr. Adrian Brown.

Declaration of Mike Goodman, Dkt. # 42, ¶ 7.  Plaintiff further explains that he "actually had Mr. Zarkos voluntarily remove almost $30,000 of repairs from any potential claim," listing various items relating to both port and starboard fuel tanks.  *Id.*, ¶ 7.  He also dispute's defendant's characterization of various items as unrelated to the repair, such as the generator exhaust, moving of the port fuel tank line, and hatch drains.  *Id.*, ¶¶ 10-12.   Finally, plaintiff states that at no time was he asked to submit to an examination under oath, nor was he asked to provide a Proof of Loss, and therefore "at no time did I make any representations which were contrary to the facts of this case."  *Id.*, ¶ 14.

Plaintiff contends that defendant has not met its burden of producing evidence that demonstrates the existence of a genuine factual issue, because it has submitted "no declaration from New Hampshire or Mr. Cater addressing this issue."  Plaintiff's Reply, Dkt. # 42.  Plaintiff's argument fails to recognize what defendant **has** produced: copies of demand letters from plaintiff's former counsel, Mr. Zarkos, dated April 22, 2008 and July 11, 2008, which include a claim for payment for the disputed items.

ORDER - 5

Declaration of Marcin Grabowski, Dkt. # 49, Exhibits C and D.[1]  These letters indicate that prior to the August 8, 2008 meeting, plaintiff was claiming reimbursement for unrelated expenses.  Plaintiff's statement that he informed Mr. Cater and defense counsel that not all of his incurred costs were directly related to the loss appears to relate only to the August 8 meeting, not events prior to that date.

Further, the parties give different accounts of what took place at the August 8, 2008 boat inspection.  Mr. Zarkos, who was present, states that

> At the inspection, the so-called owner's work was identified to Mr. Cater and Mr. Crane by Mr. Goodman and Mr. Brown.  Nothing was hidden from them.  As Mr. Crane subsequently confirmed in an e-mail to me, the issues were directly pointed out by Mr. Brown during the course of the inspection.  At no time did Mr. Goodman or Mr. Brown refuse to answer questions, refuse to show any aspect of the vessel, or provide available documentation to New Hampshire and its experts.

Declaration of Robert Zarkos, Dkt. # 55, ¶ 6.  Mr. Cater, on the other hand, testified in his deposition that he observed the additional and unrelated work on his own;  he was not first advised of it by Mr. Goodman or Mr. Brown.  Deposition of David Cater, pp. 85-88, Dkt. # 49, Exhibit J.  When asked directly if Mr. Goodman has misrepresented or concealed any facts about the extent of the repairs, he responded, "I don't believe he was forthcoming in the identification of unrelated work." *Id.*, p. 88.

Mr. Zarkos' demand letters and Mr. Cater's deposition create a genuine issue of material fact regarding plaintiff's identification or misrepresentation of certain claims items.  Whether he intentionally misrepresented any claimed amounts is a question of fact for the jury.  Plaintiff's motion for summary judgment on this affirmative defense is accordingly DENIED.

Dated this 22nd day of July 2010.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

---

[1] Plaintiff has from time to time in these proceedings objected to the use of Mr. Zarkos' letters, asserting that they represent confidential settlement negotiations which cannot be used as evidence. *See, e.g.*, Declaration of Mike Goodman, Dkt. # 42, ¶ 5.  The Court does not view these demand letters as confidential settlement communications.  Nevertheless, to the extent that they could be construed as such, plaintiff has waived any objection by presenting Mr. Zarkos' letters to support this motion.  Declaration of Rober Zarkos, Dkt. # 55, Exhibits A, C.

ORDER - 6