1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
9                              AT SEATTLE

10   MIKE GOODMAN,                          CASE NO. C09-1493RSM

11                  Plaintiff,              AMENDED ORDER

12          v.

13   NEW HAMPSHIRE INSURANCE
     COMPANY, a Pennsylvania corporation
14   with its principal place of busniess in
     NEW YORK, and AMERICAN
15   INTERNATIONAL GROUP, INC., a
     Delaware corporation with its principal
16   place of business in New York,

17                  Defendant.

18

19

20          This matter comes before the Court on the parties' cross- motions for summary judgment

21   on the issue of insurance coverage (Dkt. ## 64, 74), together with plaintiff's motion for partial

22   summary judgment regarding bad faith (Dkt. # 60).   Plaintiff Mike Goodman alleges in his

23   complaint that defendant New Hampshire Insurance Company ("New Hampshire") wrongfully

24   denied insurance coverage for a claim regarding his boat, acted in bad faith by failing to provide

AMENDED ORDER - 1

coverage, and violated Washington's Insurance Fair Conduct Act ("IFCA") and Consumer Protection Act ("CPA").  He has moved for summary judgment on these claims.  Defendant has opposed plaintiff's motions, and contends in its own motion that an exclusion in the policy for corrosion applies to bar coverage for the loss, and also that the coverage was voided by plaintiff's misrepresentations regarding the extent of repairs.

At the parties' request, the Court heard oral argument on the cross-motions for summary judgment on August 30,  2010. For the reasons set forth below, the Court shall grant in part defendant's motion as to coverage, and deny plaintiff's motions on coverage, bad faith, and violation of the CPA and IFCA.

DISCUSSION

**A.  Background Facts**.

Plaintiff Mike Goodman is the owner of the *Conundrum*, a forty-eight foot motor yacht, insured at all times relevant to this action with defendant New Hampshire.  On September 24, 2007, while the yacht was moored at Elliot Bay Marina, a leaking starboard fuel tank triggered the automatic bilge pumps, which pumped the diesel fuel overboard into the water.  When the fuel leak was discovered, the bilge pumps were shut off and the spilled fuel was cleaned up at a cost to plaintiff of $4,433.58.  Plaintiff contacted New Hampshire to request information regarding coverage for the spill clean-up costs.  In the course of investigating the source of the spill, New Hampshire hired a marine surveyor, Dave Cater, who arranged to remove the starboard fuel tank for inspection to determine the cause of the leak.  This required removal of the vessel's cockpit and decking.  After inspecting and testing the aluminum fuel tank, Mr. Cater

AMENDED ORDER - 2

1    determined that the fuel tank leak was due to a hole in the tank caused by corrosion, which is

2    excluded from coverage under the applicable policy.

3            Plaintiff hired a marine contractor, Driver Marine, to clean the boat, replace both fuel

4    tanks (port and starboard tanks), and to rebuild and replace the vessel's superstructure, cockpit

5    and deck.  He then submitted invoices for the work done by Driver Marine to New Hampshire.

6    Declaration of Mike Goodman, Dkt. # 14, ¶¶ 7, 8.  Relying on the corrosion exclusion, a claims

7    adjustor for New Hampshire determined that a reasonable amount for covered costs related to the

8    fuel leak was $20,328.96.  This amount included  $4,433.58 for the cost of the cleanup of the

9    spill (pollution recovery), and $15,895.38 as the reasonable cost of repairing the damage done by

10   Mr. Cater's investigation and removal of the starboard fuel tank.  Declaration of Mike Goodman,

11   Dkt. # 14, ¶ 9.   Plaintiff asserts that his actual losses, all of which should be covered, are his

12   "out-of-pocket expenses for the repairs to my boat in the amount of approximately $111,122.42,"

13   loss of use and enjoyment of his boat in the amount of $52,960.96, and "investigatory costs as a

14   result of New Hampshire's bad faith conduct" in the amount of "approximately $56,043.97."

15   Declaration of Mike Goodman, Dkt. # 75, ¶ 3.

16           Plaintiff filed this action in King County Superior Court to recover these costs, including

17   the entire costs of repairs to the vessel, the costs of investigating the claim, and the costs of

18   repairs to the fuel tanks.  Complaint, Dkt. # 1, p. 6.  The complaint asserts causes of action for

19   breach of contract, bad faith, violation of the Washington Consumer Protection Act ("CPA"),

20   and violation of the Washington Insurance Fair Conduct Act ("IFCA"), and seeks attorneys' fees

21

22

23   AMENDED ORDER - 3

24

pursuant to *Olympic Steamship*[1] and the CPA.  Defendant New Hampshire removed the case to this Court on the basis of the parties' diversity.  Dkt. # 1.  Defendant American International Group, Inc., was dismissed from the action on the stipulation of the parties.  Dkt. # 24.

Plaintiff filed an early motion for partial summary judgment on coverage, which was denied because the facts were not sufficiently developed at that time.  Dkt. # # 13, 66.  After defendant filed an amended answer asserting an affirmative defense that the policy coverage was rendered void by misrepresentations made by plaintiff in presenting his claim, plaintiff moved for summary judgment of dismissal of that defense.  Dkt. # 41.  That motion was also denied.  Dkt. # 87.  That left the three summary judgment motions now pending:  the cross-motions on coverage, and plaintiff's motion on bad faith.

**B. The Policy Language**.

The issues surrounding coverage are governed by several relevant paragraphs in the policy, which shall be set forth in the order they appear.  First, in the section titled "General Conditions and Exclusions," the policy states,

11.  CONCEALMENT OR MISREPRESENTATION

Any relevant coverages shall be voided if **you** intentionally conceal or misrepresent any material fact or circumstance relating to this insurance, or **your** insurance application, whether before or after a loss.

New Hampshire Insurance Company Yacht Policy, Dkt. # 65, Exhibit 5, p. 66 (emphasis in original).

---

[1] *Olympic Steamship. Co. v. Centennial Ins. Co.,* 117 Wn.2d 37, 811 P.2d 673 (1991).

AMENDED ORDER - 4

Under Section A, "Hull Insurance," the policy states,

1.  WHAT **WE** INSURE:

(a) Physical Loss to **Your Yacht**: We shall pay for direct physical loss to **your yacht** arising out of all perils unless otherwise excluded herein.

(b) Hidden Defect: We shall pay for indirect physical loss or **property damage** caused by any hidden defect in the machinery, the hull, or any other area of **your yacht**.  In the event a mast failure is deemed to be caused by a hidden defect in the mast, the mast shall be considered one indivisible unit.  **We** shall not, however, pay for the cost of replacing or repairing the defective part.

. . . .

10.  CAUSES OF LOSS THAT ARE NOT COVERED:

. . . .

(b) **We** shall not cover any loss or damage arising out of:

(1) Any intentional misuse or misconduct, or lack of reasonable care or due diligence, in the operation or maintenance of **your yacht** or **trailer**;

(2) Any wear and tear, gradual deterioration, weathering, inherent vice, insects, animals, vermin, mold, marine life, electrolytic or galvanic action, corrosion, dampness of atmosphere, gelcoat or fiberglass blistering, wet or dry rot, or extremes of temperature; . . .

*Id.*, p. 67- 68 (emphasis in original).

Under Section H, "Fuel Spill Liability," the policy states,

1.  WHAT **WE** INSURE: **We** shall pay those amounts **you** are legally responsible to pay for the containment, clean-up, **property damage** and assessments arising out of a **fuel spill occurrence** which results from the ownership, maintenance, use, or operation of **your yacht**.

*Id.*, p. 70 (emphasis in original).

AMENDED ORDER - 5

1

**C. Summary Judgment Standard**.

2

Summary judgment is appropriate when, viewing the facts in the light most favorable to

3

the nonmoving party, the records show that "there is no genuine issue as to any material fact and

4

that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  Once the moving

5

party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to

6

designate, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific

7

facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324,

8

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

9

All reasonable inferences supported by the evidence are to be drawn in favor of the

10

nonmoving party. *See Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1061 (9th Cir.2002).

11

"[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary

12

judgment must be denied."  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d

13

626, 631 (9th Cir.1987). "The mere existence of a scintilla of evidence in support of the non-

14

moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216,

15

1221 (9th Cir.1995). "[S]ummary judgment should be granted where the nonmoving party fails

16

to offer evidence from which a reasonable jury could return a verdict in its favor." *Id*. at 1221.

17

**D. Analysis**.

18

1.  <u>Cross-Motions for Summary Judgment on Coverage</u>

19

Because this is a diversity case, the Court applies Washington's choice of law rules.  The

20

parties agree, and the Court finds, that Washington law applies.

21

In Washington, insurance policies are construed as contracts. An insurance policy is

22

construed as a whole, with the policy being given a fair, reasonable, and sensible construction as

23

AMENDED ORDER - 6

24

would be given to the contract by the average person purchasing insurance. If the language is clear and unambiguous, the court must enforce it as written and may not modify it or create ambiguity where none exists. If the clause is ambiguous, however, extrinsic evidence of intent of the parties may be relied upon to resolve the ambiguity. Any ambiguities remaining after examining applicable extrinsic evidence are resolved against the drafter-insurer and in favor of the insured. A clause is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable. *Panorama Vill. Condo. v. Allstate Ins. Co.*, 144 Wash.2d 130, 137, 26 P.3d 910 (2001) (*quoting Weyerhaeuser Co. v. Commercial Union Ins. Co*., 142 Wash.2d 654, 665-66, 15 P.3d 115 (2000)) (internal quotations omitted).

"The insured bears the burden of showing that coverage exists; the insurer that an exclusion applies." *Mutual of Enumclaw Ins. Co. v. T & G Constr., Inc*., 165 Wash.2d 255, 268, 199 P.3d 376 (2008). Under Washington law, the Court must liberally construe the policy in favor of finding coverage. *See, e.g., Bordeaux, Inc. v. Am. Safety Ins. Co.,* 145 Wash.App. 687, 694, 186 P.3d 1188 (2008). Coverage exclusions "are contrary to the fundamental protective purpose of insurance and will not be extended beyond their clear and unequivocal meaning;" they are "strictly construed against the insurer." *Stuart v. Am. States Ins. Co.*, 134 Wash.2d 814, 818-19, 953 P.2d 462 (1998).

Marine surveyor David Cater, who investigated the cause of the fuel leak and now testifies as defendant's expert, determined that the hole in the fuel tank was caused by corrosion "pit-thru." Declaration of David Cater, Dkt. # 20, ¶4 and Exhibit 5. He explained that an electrolytic reaction between seawater and the aluminum fuel tank resulted in pitting and eventually a hole in the tank. The seawater came from "[p]eriodic wetting of the fuel tanks []

AMENDED ORDER - 7

incurred through cockpit hatches and deck leaks over the lifetime of the vessel (28 years)---by

rain, sea spray, wash down water and dirt, and apparently by Mr. Goodman cooling his vessel's

cockpit deck by repeatedly flushing with buckets of sea water for his and his guests' personal

comfort. . . ." Dkt. # 20, Exhibit 6, p. 15.  Plaintiff's expert Joseph Bozick agreed at his

deposition that the hole was caused by corrosion of the aluminum tank, which resulted from

galvanic action from the presence of seawater.  Declaration of Matthew Crane, Dkt. # 65, Exhibit

1 (Deposition of Joseph Bozick), pp. 33-35.

Defendant denied plaintiff's claim for loss, beyond offering payment for the fuel spill

clean-up and cost of repairs for damage done by the investigation, on the basis that loss from

corrosion is excluded under Paragraph 10 of Section A of the policy, set forth above.  Defendant

has moved for summary judgment on the issue of coverage on this basis.  In opposing

defendant's motion and cross-moving for summary judgment on coverage, plaintiff asserts that

there is no factual issue regarding the corrosion as a cause of the leak, but argues that under the

efficient proximate cause rule, coverage should be provided.   Plaintiff also contends that

coverage exists because the hole in the fuel tank was a hidden defect which is covered under

Paragraph 1(b) of Section A, set forth above.   Plaintiff's contentions shall be addressed

separately.

The efficient proximate cause rule, adopted by the Washington Supreme Court in 1983,

provides that

> where a peril specifically insured against sets other causes into motion which, in
> an unbroken sequence, produce the result for which recovery is sought, the loss is
> covered, even though other events within the chain of causation are excluded from
> coverage.

AMENDED ORDER - 8

*McDonald v. State Farm Fire & Caualtys. Co.*, 119 Wash.2d 724, 731, 837 P.2d 1000 (1992)

(*citing Graham v. Pub. Employees Mutual Ins. Co.*, 98 Wash.2d 533, 538, 656 P.2d 1077

(1983)).

> The efficient proximate cause rule is a rule of contract construction. The rule requires courts to apply insurance contract causation language with reference to the efficient proximate cause of the loss, rather than its immediate, physical cause. The rule effectively imposes liability on an insurer for a loss efficiently caused by a covered peril, even though other, excluded perils contributed to the loss.

*Sunbreaker Condominium Association v. Travelers Insurance Co.,* , 79 Wn.App. 368, 374-75,

901 P.2d at 1082-83 (citations omitted); *accord, Graham*, 98 Wn.2d at 538, 656 P.2d at 1081.

It is plaintiff's position that the efficient proximate cause of the hole in the fuel tank was

water intrusion, which led to the corrosion that caused the hole.  The water intrusion itself

happened, according to plaintiff, due to a hidden defect in the construction of the deck.

According to plaintiff, the efficient proximate cause rule would apply because the initiating

cause, a design defect that allowed intrusion of water, is a covered cause under the policy.

Plaintiff's argument is misplaced on several accounts.  First, plaintiff has provided no

evidence from which the Court could find that the defect in design that allowed the intrusion of

water was "hidden."  Indeed, the evidence cited by plaintiff, the Declaration of Joseph Boznick,

states the opposite.  Mr. Boznick provided a rebuttal report to refute Mr. Cater's testimony that

water intrusion into the bilge area was due to construction defects coupled with a lack of

maintenance.  In his rebuttal expert report, Mr. Boznick states,

> Mr. Cater testified that the hatches "were of a non-watertight type."  However, when hatches are nonwatertight, water gets through routinely from rain, salt water spray, and saltwater washdown.  Maintenance does not make the hatches water tight.  Moreover, **the photographs I have reviewed in this case** show that there are

AMENDED ORDER - 9

> no drainage channels/trenches that extend overboard from the deck hatches.
> Because the hatches are recessed into the deck, water that enters the gap between
> the hatches and the enclosing cockpit deck will seep into the bilge,
> and discharge into the bilge when lifted.  The channel/trenches would allow for
> the discharge of water overboard at the bottom edge of the recessed hatch.  Lack
> of such channels/trenches would, in fact, be a design defect.

Declaration of Joseph Boznick, Dkt. # 52, Exhibit 2, p. 1 (emphasis added).  As Mr. Boznick

made his determination regarding the hatch construction from a photograph, it cannot be said to

be "hidden."

Even if the construction defects that allowed water intrusion could be considered

"hidden," there is no basis for application of the efficient proximate cause rule to mandate

coverage.  Washington courts have held that the efficient proximate cause rule does not apply to

exclusionary clauses that employ the term "arising out of" as Paragraph 10, Section A does here.

*See*, *Mutual of Enumclaw Insurance Co. v. Patrick Archer Construction, Inc.*, 123 Wash. App.

728, 740, 97 P. 3d 751 (2004).   The phrase "arising out of" is unambiguous and has a broader

meaning than "caused by" or "resulting from." *Toll Bridge Auth. v. Aetna Ins. Co.*, 54

Wash.App. 400, 404, 773 P.2d 906 (1989).  It ordinarily means "originating from," "having its

origin in," "growing out of," or "flowing from."  *Krempl v. Unigard Sec. Ins. Co.*, 69 Wash.App.

703, 707, 850 P.2d 533 (1993) (*quoting Toll Bridge Auth.*, 54 Wash.App. at 404, 773 P.2d 906).

"Arising out of" does not mean "proximately caused by." *Toll Bridge Auth.*, at 407, 773 P.2d

906.

> To construe 'arising out of' as requiring a finding of 'proximate cause' before we
> would know whether the accident arose out of the use or operation of the vessel does
> violence to the plain language of the policy.  'Arising out of' and 'proximate cause'
> describe two different concepts. . .  A determination of proximate cause is not a
> necessary precedent to determination of coverage in this case.

AMENDED ORDER - 10

*Id.* at 407.

Plaintiff contends that the cases addressing the "arising out of" language are third-party liability cases, and the rule does not apply to a first-party property claim.  Opposition, Dkt. # 74, p. 9.  This is incorrect.  The Washington cases which discuss the reach of an "arising out of" exclusion, and the inapplicability of the efficient proximate cause rule where such language is employed in the policy, neither make nor imply such a distinction.

The Court therefore finds that the explicit language of the policy excludes losses arising out of perils such as corrosion, as well as dampness and/or galvanic or electrolytic action.  This exclusion applies to foreclose coverage here.  The efficient proximate cause rule is inapplicable as a matter of law.  *Toll Bridge Auth.*, 54 Wash.App. at 407.

In an alternate argument, plaintiff asserts that the hole in the fuel tank was itself a hidden defect, and should be covered under Paragraph 1, Section A of the policy regardless of cause. Plaintiff  contends that the "hidden defect" coverage conflicts with the corrosion exclusion, creating an ambiguity in the policy which must, under Washington law, be resolved in his favor.

An insurance policy provision is ambiguous when it is fairly susceptible to two different interpretations, both of which are reasonable.  *Lynott v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, 123 Wash. 2d 678, 690, 871 P. 2s 146 (1994).  However, a policy is not structurally ambiguous merely because the relevant language is not contained within a single clause or page. *Mutual of Enumclaw Insurance Co. v. Grimstad-Hardy*, 71 Wash. App. 225, 235, 857 P. 2d 1064 (1993), *review denied*, 123 Wash. 2d 1017, 871 P. 2d 600 (1994).  Provisions are not necessarily inconsistent or ambiguous merely because the scope of coverage must be

AMENDED ORDER - 11

determined by the examination of several provisions. *Doyle v. State Farm Ins. Co*., 61 Wash.App. 640, 644, 811 P.2d 968, *review denied*, 118 Wash.2d 1005, 822 P.2d 288 (1991).

The Court finds no ambiguity in the policy here, nor any conflict between the coverage for "hidden defects" and the exclusion for corrosion.  In Washington, insurance policies are to be construed as contracts. *See, e.g.  Findlay v. United Pacific Insurance Company*, 129 Wash. 368, 378, 917 P. 2d 116 (1996) (*en banc*).   Where a peril is specifically excluded from coverage, the policy should be interpreted in such a way to give effect to that provision.  *Id*., *citing McDonald v. State Farm Fire & Casualty Co*., 119 Wash 2d 724, 744, 837 P. 2d 1000 (1992).  The insurer, as a private contractor, is permitted to limit its liability "unless to do so would be inconsistent with public policy."  *Id*.  Plaintiff has advanced no public policy grounds for voiding the exclusion set forth here.  The exclusion for losses arising out of corrosion is reasonable for a policy covering a boat, it was clearly stated within the relevant section of the policy, and it is not ambiguous.  Moreover, although plaintiff has offered testimony tending to show that the corrosion in the fuel tank may have been "hidden," nowhere has he demonstrated or argued that it was a "defect"  within the meaning of the policy.  Accordingly, defendant's motion for summary judgment as to coverage for losses arising out of corrosion shall be granted, and plaintiff's cross-motion shall be denied.


2.  <u>Defendant's Motion for Summary Judgment on the Affirmative Defense</u>

Defendant has also moved for summary judgment on the affirmative defense that coverage was voided entirely, under Paragraph 11 of the General Conditions and Exclusions of the policy, on the basis that plaintiff intentionally misrepresented the cost and scope of the

AMENDED ORDER - 12

repairs to his boat, by presenting bills for work beyond what was necessary to repair damage from the investigation.   Defendant contends that plaintiff's admissions, including matters which were deemed admitted by the Court (see Order, Dkt. # 67), establish as a matter of law that "he intentionally misrepresented material facts concerning his claim." Dkt. # 89, p. 1.

Plaintiff has responded to these allegations with several declarations, all made under penalty of perjury, stating that he did not intentionally misrepresent or conceal anything during the claims process, and that he informed Mr. Cater and the insurance company that not all of the costs incurred were related directly to his loss.  Declaration of Mike Goodman, Dkt. # 30, ¶¶ 6, 7;  Dkt. # 42, ¶¶ 7, 13.  He also states that he was asked by Mr. Cater to produce all receipts for the repairs, not just the ones directly related to his claim.  Dkt. # 30, ¶¶ 5, 10;  Dkt. # 53, ¶ 4; Further, he asserts that work which appears to be unrelated to the repairs was actually necessary to return the boat to its original condition, or to correct, at lower cost, design defects on the hatch covers.  Dkt. # 42, ¶¶ 11-13;  Dkt. # 53, ¶ 3;  Dkt. # 92, ¶ 2.

Voiding of coverage under Paragraph 11 requires intentional misrepresentation. Plaintiff's sworn declarations, the credibility of which cannot be questioned at the summary judgment stage, create an issue of fact for the jury as to his intent. Summary judgment on defendant's affirmative defense shall accordingly be denied.


3.  <u>Plaintiff's Motion for Summary Judgment Regarding Bad Faith</u>

In a separate motion, plaintiff has moved for summary judgment on his claims of bad faith, violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86 *et seq.;* and violation of the Washington Insurance Fair Conduct Act ("IFCA"), RCW 48.30.015.  Dkt. # 60.

AMENDED ORDER - 13

Defendant has opposed the motion in all respects.  The three bases asserted by plaintiff shall be addressed in turn.

    a.  <u>Bad Faith</u>

In Washington, insurers have a duty to act in good faith and to deal fairly with their insureds, and violation of that duty may give rise to a tort action for bad faith. *Smith v. Safeco Ins. Co.*, 150 Wash.2d 478, 484, 78 P.3d 1274 (2003) (*citing  Truck Ins. Exch. v. Vanport Homes, Inc*., 147 Wash.2d 751, 765, 58 P.3d 276 (2002)). According to RCW 48.01.030, "[t]he business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, their providers, and their representatives rests the duty of preserving inviolate the integrity of insurance."

The duty to act in good faith requires the insurer to act reasonably in interpreting the policy and investigating the claim. *See Torina Fine Homes v. Mutual of Enumclaw Ins. Co.*, 118 Wash.App. 12, 21, 74 P.3d 648 (2003), *rev. denied*, 151 Wash.2d 1010, 89 P.3d 712 (2004). A denial of coverage that is unreasonable, frivolous, or unfounded constitutes bad faith. *Smith v. Safeco Ins. Co.*, 150 Wash.2d 478, 484, 78 P.3d 1274, 1277 (2003); *Kirk v. Mt. Airy Ins. Co.*, 134 Wash.2d 558, 560, 951 P.2d 1124 (1998).  An insured may maintain an action against its insurer for bad faith investigation of the insured's claim and violation of the CPA regardless of whether the insurer was ultimately correct in determining coverage did not exist.   *Coventry Associates v. American States Ins. Co.*, 136 Wash.2d 269,279  961 P.2d 933 (Wash.,1998).

In *Smith*, the Washington Supreme Court explained the relative burdens of policyholders and insurers for claims alleging bad faith denial of insurance coverage:

AMENDED ORDER - 14

> If the insured claims that the insurer denied coverage unreasonably in bad faith, then **the insured must come forward with evidence that the insurer acted unreasonably**. The policyholder has the burden of proof. The insurer is entitled to summary judgment if reasonable minds could not differ that its denial of coverage was based on reasonable grounds ... If, however, reasonable minds could differ that the insurer's conduct was reasonable, or if there are material issues of fact with respect to the reasonableness of the insurer's action, then summary judgment is not appropriate. If the insurer can point to a reasonable basis for its action, this reasonable basis is significant evidence that it did not act in bad faith and may even establish that reasonable minds could not differ that its denial of coverage was justified.

*Smith*, 150 Wash.2d at 486, 78 P.3d 1274 (emphasis added).  The test is not whether the insurer's interpretation of the policy is correct, but whether the insurer's conduct was reasonable. *Wright v. Safeco Ins. Co.*, 124 Wash.App. 263, 279-80, 109 P.3d 1 (2004) (*citing Torina Fine Homes*, 118 Wash.App. at 21, 74 P.3d 648).

This Court must determine whether genuine issues of material fact remain as to the reasonableness of the insurers' policy interpretations and investigations. If reasonable minds could not differ that the insurer's denial of coverage was based on a reasonable interpretation of the policies, and that it conducted a reasonable investigation to make the final determination, then this Court must deny plaintiff's motion for summary judgment on bad faith.

As to the investigation, plaintiff asserts that he was originally offered a "low ball" amount of $2,000, plus clean-up costs, before any investigation took place.  Declaration of Mike Goodman, Dkt. # 14, ¶ 5.  Plaintiff has not produced a writing of this offer, and Frank Micari, the only adjustor who handled plaintiff's claim from the beginning, denies that he made any such offer either verbally or in writing.  Declaration of Frank Micari, Dkt. # 73.  Attached to his declaration is a copy of Mr. Micari's initial response to plaintiff's notice of the loss, dated September 27, 2007, the date that plaintiff first contacted his insurer.  *Id.*  The response makes no

AMENDED ORDER - 15

offer of settlement and simply notifies plaintiff that Mr. Cater will be engaged to perform an investigation. *Id*. Nevertheless, for the purposes of deciding the bad faith issue only, the Court will analyze the question as if this early settlement offer were made as plaintiff describes. Such a "low ball" offer would not demonstrate bad faith, because as the Court has found above, there was no coverage for the loss beyond what was provided under the fuel spill coverage provision. The offer as described by plaintiff would have fully compensated him for his out-of-pocket expenses for the fuel spill, as well as have afforded an additional amount to clean up the bilge. This was the total extent of plaintiff's loss at that point. Had such an offer been made, plaintiff could have avoided the further costs of investigation, and the damage it caused to his boat, by simply accepting it. Thus, if such an offer were made, it would not serve to demonstrate bad faith on the part of the insurer.

Plaintiff also asserts that New Hampshire acted in bad faith in failing to consider the efficient proximate cause rule in determining the cause of the fuel leak. The Court has determined above that the efficient proximate cause analysis was not applicable to this claim. Defendant's failure to apply efficient proximate cause analysis was reasonable, and not an indication of bad faith, because such analysis was foreclosed by the "arising out of" language in the policy itself.

As plaintiff has failed to produce any evidence that defendant used an unreasonable policy determination, performed an improper investigation, or otherwise acted in bad faith, he is not entitled to summary judgment on this claim.

     b.  <u>Washington Consumer Protection Act</u>

AMENDED ORDER - 16

To prevail on a Washington Consumer Protection Act (CPA) claim under RCW 19.86, plaintiff must show: (1) an unfair or deceptive act or practice; (2) in trade or commerce; (3) which affects the public interest; (4) that injured the plaintiff's business or property; and (5) that the unfair or deceptive act complained of caused the injury suffered.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 784-785, 719 P.2d 531 (1986).  The Washington Administrative Code (WAC) contains specific consumer protection standards for the insurance industry. The regulations provide that "failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies" and "refusing to pay claims without conducting a reasonable investigation" are unfair or deceptive acts or practices. WAC 284-30-330 (2007). Violations of WAC 284-30-330 may constitute *per se* violations of the Consumer Protection Act, providing the other *Hangman Ridge* factors are also met. *Truck Ins. Exchange v. Vanport Homes, Inc*., 147 Wash.2d 751, 764, 58 P.3d 276 (2002).

Based on the above analysis concerning the bad faith claim, the Court finds that plaintiff has failed to produce facts which demonstrate that New Hampshire violated the CPA through bad faith.  The Court has determined that the insurer used reasonable standards for the prompt investigation of plaintiff's claim, and the investigation and ultimate decision to deny coverage were also reasonable. Thus, plaintiff is not entitled to summary judgment on his claim that New Hampshire violated the CPA by engaging in bad faith in the investigation and claims handling process.

Violation of other insurance regulations may also constitute an unfair trade practice, which similarly may result in CPA liability if the remaining elements of the five-part test are established.  *Indus. Indem. Co. of the Northwest, Inc. v. Kallevig*, 114 Wash.2d 907, 923, 792

1   P.2d 520 (1990).  Insurance regulations are set forth in the Washington Administrative Code

2   ("WAC").   Plaintiff does not specify in his complaint regarding the CPA claim which section of

3   the WAC he believes defendant violated; he simply alleges that "[t]he acts and omission on the

4   part of Defendants constitute violations of the Washington Administrative Code."  Dkt # 1, ¶ 6.2.

5   However, in moving for summary judgment on his claim of violation of the CPA, plaintiff points

6   to six specific provisions in WAC 284-30-330, which states in relevant part as follows:

7   **Specific unfair claims settlement practices defined**

8   The following are hereby defined as unfair methods of competition and unfair or
    deceptive acts or practices of the insurer in the business of insurance, specifically
9   applicable to the settlement of claims:

10   . . . .

11   (2) Failing to acknowledge and act reasonably promptly upon communications with
     respect to claims arising under insurance policies.
12

     (3) Failing to adopt and implement reasonable standards for the prompt investigation of
13   claims arising under insurance policies.

14   (4) Refusing to pay claims without conducting a reasonable investigation.

15   (5) Failing to affirm or deny coverage of claims within a reasonable time after fully
     completed proof of loss documentation has been submitted.
16

     . . . .
17

18   (7) Compelling a first party claimant to initiate or submit to litigation, arbitration, or
     appraisal to recover amounts due under an insurance policy by offering substantially less
     than the amounts ultimately recovered in such actions or proceedings.
19

     . . . .
20

21   (13) Failing to promptly provide a reasonable explanation of the basis in the insurance
     policy in relation to the facts or applicable law for denial of a claim or for the offer of a
     compromise settlement.
22

23   WAC 284-30-330.

24

AMENDED ORDER - 18

1   Plaintiff's contention that New Hampshire violated section (3) of WAC 294-30-330 is

2   based on the assertion that adjuster Frank Micari was unfamiliar with Washington insurance law

3   and failed to apply efficient proximate cause analysis.  This argument was rejected by the Court

4   in the discussion of efficient proximate cause, above.  Plaintiff also contends that defendant

5   violated section (5) of the regulation by "delaying resolution of the claim for over thirteen

6   months" (Plaintiff's Motion for Summary Judgment, Dkt. # 60, p. 11).  This assertion is refuted

7   by undisputed facts in the record.   On October 2, 2007, shortly after plaintiff notified New

8   Hampshire of the September 24 fuel spill, Mr. Cater made his first survey of the damage.  Once

9   he determined that a thorough investigation would require removal of the fuel tank, there were

10  necessarily delays while the removal and reconstruction of the boat deck were performed.  Mr.

11  Cater  ultimately determined that corrosion was the cause of the hole in the fuel tank.  Mr. Micari

12  informed plaintiff on March 24, 2008, that New Hampshire would offer plaintiff $20,328.96,

13  including the $4,433.58 cleanup cost which had already been paid.   The balance of $15,895.38

14  was to cover the expense of the investigation.  Declaration of Thomas Lether, Dkt. # 62, Exhibit

15  2.  Thus defendant completed the investigation and made an offer affirming in part and denying

16  in part coverage within six months, not the thirteen months that plaintiff asserts.  In light of the

17  nature and complexity of the investigation, six months was a reasonable time and did not violate

18  section (5) of  WAC 284-30-330.  Further, these same facts demonstrate that defendant

19  conducted a thorough investigation of the claim, thus demonstrating that there was no violation

20  of section (4) of the regulation.

21   Plaintiff contends that New Hampshire violated WAC 284-30-330(2) because "Mr.

22  Micari admitted in his deposition that there was no written communication from himself to

23  Plaintiff for approximately six months—between September 27, 2007 and March 24, 2008."

24

AMENDED ORDER - 19

1   Plaintiff's Motion for Partial summary Judgment, Dkt. # 60, p. 15.   This admission wholly fails

2   to demonstrate a violation of the cited section, which requires that the insurer "acknowledge and

3   act reasonably promptly upon communications with respect to claims."  WAC 284-30-330(2).

4   The section does not state that written communication is required.  Mr. Micari's March 24, 2008

5   e-mail references an exchange of voice mail messages between plaintiff and himself prior to that

6   date.  Declaration of Thomas Lether, Dkt. # 62, Exhibit 2.  Plaintiff had, in the meantime,

7   numerous communications with Mr. Cater regarding his claim.  Declaration of Marcin

8   Grabowski, Dkt. # 72, Exhibits D, E, F. H, I.  Further, plaintiff has not cited to any specific

9   communication by him to which defendant failed to respond.  These facts demonstrate that there

10  is no basis for finding that defendant's actions violated section (2) of  WAC 284-30-330.

11         Plaintiff's contention that defendant violated section (13) of WAC 284-30-330, which

12  requires a prompt explanation of the basis for denial of a claim, is based on two assertions:  that

13  Mr. Micari failed to quote a specific policy provision or state facts to support his conclusion, and

14  that Mr. Micari failed to advise plaintiff of coverage under the "hidden defect" clause.  Plaintiff's

15  Motion for Partial Summary Judgment, Dkt. # 60, p. 9.  The first assertion is refuted by Mr.

16  Micari's March 24, 2008 email, in which he states, "The cause of the leakage of fuel from the

17  starboard tank has been determined to be the result of the corrosion of the fuel tank and wear and

18  tear.  The policy of insurance specifically excludes damage resulting from both of the two above

19  causes."  Declaration of Thomas Lether, Dkt. # 62, Exhibit 2.  It was not necessary for Mr.

20  Micari to cite to this exclusion by paragraph and number, as the provision is clearly stated and

21  appropriately titled in the policy. The regulation does not require a specific citation but rather a

22  "reasonable explanation of the basis in the insurance policy."  WAC 284-30-330(13).   Nor was

23  it necessary for Mr. Micari to advise plaintiff of coverage under the hidden defect provision, as

24

AMENDED ORDER - 20

1   that provision did not apply to plaintiff's claim.  Plaintiff's assertion that defendant violated this

2   regulation is wholly without merit.

3         Finally, plaintiff contends that defendant violated WAC 294-30-330(7) by compelling

4   him to litigate to order to obtain the benefit to which he was entitled under the policy.  This

5   contention is also without merit.  The cited section applies where the insurer compels the insured

6   to institute litigation by "offering substantially less than the amounts ultimately recovered in

7   such actions or proceedings."  WAC 284-30-330(7).   Here, New Hampshire offered plaintiff the

8   sum of $20,328.96, to cover the $4,433.58 cleanup cost and $15,895.38 for reimbursable costs of

9   investigation.  Plaintiff will not recover more than that amount as a result of this litigation.

10  Therefore, there is no violation of this section.

11        As plaintiff has failed to demonstrate any violation of a section of WAC 284-30-330, he

12  is not entitled to benefit from the *per se* rule that such violation is an unfair practice under the

13  CPA.  *Indus. Indem. Co. of the Northwest, Inc. v. Kallevig*, 114 Wash.2d at 923.   His motion for

14  summary judgment on the CPA shall accordingly be denied.

15        c.   <u>Washington Insurance Fair Conduct Act</u>

16        Plaintiff also alleges in his complaint a violation of the "Washington Insurance Fair

17  Claims [sic] Act," RCW 48.30.015.[1]   He states, "On November 2, 2008, Plaintiff provided

18  twenty-day notice as required under RCW 48.30.015 of a potential claim arising under the

19  Washington State Insurance Fair Claims Act.  There was no response to this letter."  Complaint,

20  Dkt. # 1, ¶ 7.3.

21        Washington voters passed Referendum 67, popularly known as the Insurance Fair

22  Conduct Act ("IFCA"), in November 2007.  It was subsequently codified as RCW 48.30.015.

23  The IFCA creates a private right of action to a first-party claimant who has been unreasonably

24

AMENDED ORDER - 21

denied insurance coverage, and provides for treble damages and an award of attorney's fees.

*See*, RCW 48.30.015(1) – (3).

Section (8) of the statute requires that

(a) Twenty days prior to filing an action based on this section, a first party claimant must provide written notice of the basis for the cause of action to the insurer and office of the insurance commissioner.  Notice may be provided by regular mail, registered mail, or certified mail with return receipt requested. . . The insurer and insurance commissioner are deemed to have received notice three business days after the notice is mailed.

(b) If the insurer fails to resolve the basis for the action within the twenty-day period after the written notice by the first party claimant, the first party claimant may bring the action without any further notice.

(c)  The first party claimant may bring an action after the required period of time in (a) of this subsection has elapsed.

RCW 48.30.015(a), (b), (c).   This section imposes a duty upon the insured to give notice prior to filing a lawsuit, but nowhere does it impose a duty on the insurer to respond to the notice.

Plaintiff's allegation that New Hampshire failed to respond to his notice, set forth above, therefore fails to describe a violation of the IFCA.

Plaintiff also alleges in his complaint that "[d]efendant's acts and omissions in regard to this claim constitute a violation of the Washington State Insurance Fair Claims Act, RCW 48.30.015."  Complaint, Dkt. # 1, ¶ 7.2.   Nowhere does he specify which acts or omissions he claims as violations, nor which sections of the IFCA he believes was violated, beyond the conclusory statement in his bad faith claim that

Defendants' conduct in failing to extend coverage, acknowledge communications from its insured, attempt to compromise a covered claim for less than what was owed, and Defendants' refusal to pay the reasonable and necessary costs associated with the investigation of the loss has resulted in a breach of their statutory and regulatory obligation.

Complaint, Dkt. # 1, ¶ 5.2.   These allegations have been addressed above, under plaintiff's claim of bad faith, and were found to be lacking in merit.

AMENDED ORDER - 22

1    In briefing his IFCA claim in his summary judgment motion, plaintiff argues various

2  other bases for finding a violation of this statute.   Although plaintiff did not specifically plead

3  any of these in his complaint, they shall be addressed briefly.

4    Section (5) of the IFCA provides that:

5    (5)  A violation of any of the following is a violation for the purposes of subsections (2)
       and (3) of this section:

6

7    (a) WAC 284-30-330, captioned "specific unfair claims settlement practices defined"

8    (b) WAC 284-30-350, captioned "misrepresentation of policy provisions"

9    (c) WAC 284-30-360, captioned "failure to acknowledge pertinent communications"

10   (d) WAC 284-30-370, captioned "standards for prompt investigation of claims"

11   (e) WAC 284-30-380, captioned "standards for prompt, fair and equitable settlements
       applicable to all insurers" or

12   (f) An unfair claims settlement practice rule adopted under RCW 48.30.010 by the
       insurance commissioner intending to implement this section. The rule must be codified

13     in chapter 284-30 of the Washington Administrative Code.

14  RCW 48.30.015(5).

15    Plaintiff contends that New Hampshire violated WAC 284-30-350(1) by Mr. Micari's

16  "fail[ure] to advise Plaintiff of available coverage under his policy for hidden defects."  This

17  assertion has been addressed and rejected above.  Mr. Micari had no obligation to advise plaintiff

18  of coverage which did not apply to his claim.

19    Next, plaintiff contends that New Hampshire violated WAC 284-30-370, which states

20  that insurers must complete investigation of a claim within thirty days after notification, unless

21  the investigation cannot reasonably be completed within that time.  There is no basis for finding

22  a violation of this section, as the record demonstrates that New Hampshire acted reasonably and

23  diligently in promptly hiring Mr. Cater to perform the investigation.  Because of the work

24

AMENDED ORDER - 23

1    involved in removal of the fuel tank, it could not reasonably be completed in thirty days.  After

2    extensive work, it was completed in six months, not the thirteen months that plaintiff contends

3    were consumed.

4        Plaintiff also contends that New Hampshire violated WAC 284-30-380, which provides

5    that "[w]ithin fifteen working days after receipt by the insurer of fully completed and executed

6    proofs of loss," the insurer must notify the insured whether the claim has been accepted or

7    denied.  WAC 284-30-380(1).  However, he fails to allege facts which would demonstrate that

8    New Hampshire violated this section in any way.  Nor does it appear that he could do so, in light

9    of the fact that his declaration clearly states that he never provided an executed Proof of Loss to

10   defendant.  Declaration of Mike Goodman, Dkt. # 42, ¶ 14.  This statement was made to support

11   his sworn declaration that he did not intend to misrepresent the extent of his loss when he

12   submitted invoices and bills for repair work done.  *Id*.  Under plaintiff's theory, he never signed

13   or executed a formal Proof of Loss, and therefore he made no misrepresentations.  But absent the

14   formal Proof of Loss, he cannot now claim a violation of WAC 284-30-380.

15       Plaintiff also alleges several violations of WAC 284-30-330, all of which have been

16   addressed, and rejected, above.  In summary, the Court finds that he has failed to demonstrate

17   any violation of the IFCA, and his motion for summary judgment on this issue shall be denied.

18

19                                CONCLUSION

20       As set forth above, defendant's motion for summary judgment (Dkt. # 64) is GRANTED

21   IN PART and DENIED IN PART.  The motion is GRANTED on the issue of coverage,

22   affirming defendant's denial of coverage on the basis of the corrosion exclusion, beyond

23   payment for the fuel spill and direct costs of investigation.   The motion is DENIED as to the

24

AMENDED ORDER - 24

affirmative defense of misrepresentation which would void coverage entirely.  Plaintiff's cross-motion on the issue of coverage (Dkt. # 74) is DENIED, as is the motion to strike the Declaration of Dave Cater raised on page 1 of that moton.    Plaintiff's motion for partial summary judgment on bad faith, violation of the CPA, and violation of the IFCA is DENIED in all respects.

This result leaves one issue for trial:  defendant's affirmative defense of misrepresentation, for which the Court has found questions of fact for the jury.  The trial date in this matter was struck previously pending resolution of the summary judgment motions.  Dkt. # 88.  The Court accordingly sets a new date of **February 22, 2011** for trial of the remaining issue in this matter.  The Clerk shall issue a new scheduling order consistent with this trial date, beginning with dates for motions in limine.

Dated November 29, 2010.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

---

[1] The Notes to this statute state, "**Short title---2007 c 498**:  'This act may be known and cited as the insurance fair conduct act.' [2007 c 498 § 1.]"  RCW 48.30.015.